**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
IRENEUSZ SKRODZKI,

                              Plaintiff,

           -against-

WALT MARCELLO, MITCHELL CRANE
SERVICE INC., and MITCHELL
COMPANIES, LLC,

                         Defendants.
---------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
10-CV-5191 (ADS) (WDW)

<u>**APPEARANCES**</u>:

**ROMAN LEONOV, ESQ.**
*Attorney for the Plaintiff*
111 John Street, Suite 800
New York, NY 10038

**POHL LLP**
*Attorneys for the Defendants*
600 Third Avenue, 15th Floor
New York, NY 10016
       By: David M. Pohl, Esq., of Counsel

**SPATT, District Judge.**

     This case arises from a contract entered into by Ireneusz Skrodzki ("Szrodzki or "the

Plaintiff") for the purchase of a crane for delivery to Poland from Mitchell Crane Service, Inc.,

Mitchell Companies, LLC, and Walt Marcello (collectively, "Mitchell Crane" or "the

Defendants").  Based on the Defendants failure to deliver the crane to Poland, Szrodzki

commenced the instant action asserting the following causes of action:  (1) breach of contract;

(2) unjust enrichment; (3) seller's breach; (4) deceit; and (5) promissory estoppel.

     Presently before the Court is a motion by the Defendants seeking to:  (1) dismiss the

complaint in its entirety for lack of personal jurisdiction pursuant to Federal Rule of Civil

Procedure ("Fed. R. Civ. P.") 12(b)(2); (2) dismiss certain causes of action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6); or, in the alternative (3) stay the instant proceedings pending the outcome of a related action commenced by the Defendants in the Mississippi state court.

For the reasons set forth below, the Court grants the Defendants motion to dismiss the complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and therefore declines to address the remaining motions.

## I. BACKGROUND

The plaintiff in this action, Ireneusz Skrodzki, resides in Lindenhurst, New York, and is associated with a construction company incorporated and operating in Poland. The defendants in this action, Mitchell Crane Service Inc., Mitchell Companies, LLC, and the president of Mitchell Crane Services Inc., Walt Marcello ("Marcello") are merchants who sell and lease cranes and other construction equipment. Marcello is a resident of Mississippi and both Mitchell Crane Service, Inc. and Mitchell Companies, LLC are Mississippi corporations with their offices and principal places of business in Mississippi.

In or about 2008, Skrodzki decided to purchase a crane to be used in a construction venture in Poland. Szrodzki learned through searching the internet that Mitchell Crane had for sale the type of crane he wished to purchase, a 1986 P&H S35 (the "Crane"). Szrodzki notes that at the time he was attempting to locate a crane, Mitchell Crane had a website, located at www.mitchellcrane.com (the "Mitchell Crane Website"). This website provided information about the types of cranes available, contact information for Mitchell Crane, and a link allowing a user to directly email defendant Marcello with inquiries. Szrodzki does not affirmatively state that he viewed this website or that the website in any way influenced his decision to purchase the

Crane. Because it ultimately does not impact this analysis, for the purposes of this motion, the Court will assume that Szrodzki at least viewed the website during the course of his research.

After deciding that he wished to purchase the Crane, Skrodski then asked Monika Bolkun ("Bolkun"), a friend of his daughter, to assist him by acting as his translator and agent. In July 2008, Bolkun contacted Marcello through information obtained from the website www.cranenetwork.com (the "Cranenetwork Website"). A printout of the Cranenetwork Website and the initial correspondence between Bolkun and Marcello was attached as an exhibit to Szrodzki's opposition to the motion to dismiss. Based on the correspondence submitted by Szrodzki, it appears that Bolkun first called Marcello at the number listed on the Cranenetwork Website to discuss the Crane, and then followed up by sending an email to Marcello through Cranenetwork.com requesting additional information. By submitting an email through the Cranenetwork Website, the website transmitted the message and provided Marcello with Bolkun's email address and message. After the initial contact through the Cranenetwork Website, Bolkun and Marcello communicated directly through email and telephone.

During the course of their negotiations, the parties agreed that the Crane would require additional parts in order to be operational. Furthermore, after Szrodzki indicated that the Crane needed to be shipped to Poland, Marcello located a shipping company that could arrange for the shipment of the Crane to Poland for an additional $7,120. Thus, after negotiations, which were conducted through the exchange of emails and telephone calls, the parties agreed that Szrodzki would pay $96,500.00 in exchange for the Crane, additional crane parts, and delivery of those items to Poland. In the complaint, Szrodzki asserts that he transmitted these payments to Mitchell Crane via two separate wire transfers–$58,000 in March 2008 and $38,500 in August

2008.  The Court notes that the March 2008 date appears to be a typographical error in that contact between the parties was not initiated until July 2008.  (See Bolkun Decl., ¶4.)

Subsequent to the wire transfers, Mitchell Crane allegedly began the process of shipping the Crane to Poland.  However, Mitchell Crane ran into problems in its attempt to ship the Crane.  The complaint lacks specifics, other than to say that Szrodzki's agent attempted in good faith to assist Mitchell Crane in shipping the Crane but that ultimately, for unspecified reasons, the paperwork that Mitchell Crane provided the shipping company was insufficient to permit delivery of the Crane to Poland.  As a result, Szrodzki requested a full refund of the $96,500 that he paid for the purchase and shipment of the Crane.  However, Mitchell Crane only agreed to return, and did return, the shipping cost.  To date, Mitchell Crane retains possession of the Crane and the purchase price.

On July 2, 2010, Mitchell Crane filed a lawsuit in Mississippi state court (the "Mississippi Action") against Uslugi Sprzetowe Skrodzki Ireneusz ("USSI") and Knightbridge Surety Brokerage LLC ("Knightbridge" and together with "USSI" the "Mississippi Defendants").  According to Mitchell Crane, USSI is the Polish corporation that Skrodzki owned and on behalf of whom he effectuated the purchase of the Crane.  In addition, in the complaint in the Mississippi Action, Mitchell Crane alleges that Knightbridge was a conduit for the payments from USSI to Mitchell Crane.  In the Mississippi Action, Mitchell Crane seeks:  (1) a declaratory judgment and adjudication as to the proper owner of the Crane; (2) a declaratory judgment that the Mississippi Defendants are not entitled to any additional reimbursement; and (3) a declaratory judgment that the Mississippi Defendants are required to reimburse Mitchell Crane for the cost of the storing the Crane since September 2008; and (4) all reasonable attorneys fees and costs.

On November 9, 2010, Szrodzki filed this action against Mitchell Crane asserting causes of action, as stated above, for: (1) breach of contract; (2) unjust enrichment; (3) seller's breach; (4) deceit; and (5) promissory estoppel. Szrodzki claims that he is not required to accept ownership of the Crane and is entitled to a full refund of the purchase price because Mitchell Crane's failure to deliver the Crane to Poland rendered the entire transaction void.

On February 15, 2011, the Defendants filed the instant motion to dismiss. The primary basis for the Defendants' motion is that this Court lacks personal jurisdiction over the Defendants and therefore the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2). In the alternative, the Defendants seek partial dismissal of the complaint pursuant to Fed. R. Civ. P. 12(b)(6), asserting that the Plaintiff's fraud claim is not plead with the particularity required by Fed. R. Civ. P. 9(b), and that the Plaintiff's unjust enrichment, seller's breach, and promissory estoppels claims should be dismissed as duplicative of the breach of contract claim. To the extent the Court denies its motion to dismiss either all or part of the complaint, the Defendants also request that the Court stay the instant action pending the outcome of the Mississippi Action.

For the reasons set forth below, the Court finds it lacks personal jurisdiction over the Defendants. Therefore, the Court grants the Defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(2) and declines to address the Defendants' remaining arguments pertaining to the sufficiency of the Plaintiff's claims or the necessity of a stay.

## II. DISCUSSION

### A. Legal Standard for Determining Personal Jurisdiction in General

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to challenge a court's personal jurisdiction over it prior to the filing of an answer or the commencement of discovery. As this is a diversity case, "personal jurisdiction is determined by the law of the state in which

the district court sits, which in this case is New York." DiStefano v. Carozzi North Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001). Accordingly, in analyzing a Fed. R. Civ. P. 12(b)(2) motion, courts in New York follow a two-step process. First, a court will determine whether personal jurisdiction lies pursuant to New York's long-arm statute, CPLR §§ 301 and 302(a). Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. BP Amoco P.L.C., 319 F. Supp. 2d 352, 357 (S.D.N.Y. 2004) (citing Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 105, 108 S. Ct. 404, 98 L. Ed. 2d 415 (1987)). Second, a court must analyze whether personal jurisdiction comports with the basic requirements of due process. Id. Pursuant to the New York long-arm statute, there are two ways that a New York court can exercise personal jurisdiction over a non-resident defendant: general jurisdiction pursuant to N.Y. CPLR § 301 ("section 301") or specific jurisdiction pursuant to N.Y. CPLR § 302 ("section 302").

A plaintiff bears the burden of demonstrating personal jurisdiction over the persons or entities against whom he seeks to bring suit. Penguin Grp. (USA), Inc. v. Am. Buddha, 609 F.3d 30, 34 (2d Cir. 2010); Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001). In deciding a motion to dismiss for lack of personal jurisdiction, the Court may rely upon materials that are outside the pleadings, including any affidavits submitted by the parties. DiStefano, 286 F.3d at 84. However, where, as here, the Court "relies on the pleadings and affidavits, and chooses not to conduct a 'full-blown evidentiary hearing,' plaintiffs need only make a prima facie showing of personal jurisdiction over the defendant." Penguin, 609 F.3d at 34–35; Porina v. Marward Shipping Co., Ltd., 521 F.3d 122, 126 (2d Cir. 2008). "Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." Penguin, 609 F.3d at 35 (internal quotations marks and alterations omitted).

**B.  Whether the Court has General Jurisdiction over the Defendants Pursuant to CPLR § 301**

CPLR § 301 provides for jurisdiction over a defendant that is "engaged in such a continuous and systematic course of 'doing business' in New York as to warrant a finding of its 'presence' in the state."  Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir. 1998) (internal quotation marks and citation omitted).  "[A] corporation is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York not occasionally or casually, but with a fair measure of permanence and continuity."  Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000) (internal citation and quotation marks omitted).  In determining whether a defendant is subject to general jurisdiction, New York courts look to a number of factors including:  (1) "the existence of an office in New York"; (2) "the solicitation of business in the state"; (3) "the presence of bank accounts and other property in the state"; and (4) "the presence of employees of the foreign defendant in the state."  Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985).

The Defendants assert that they do not maintain an office in New York, do not conduct solicitations of business targeting New York consumers, do not maintain any bank accounts or other property in New York, and do not have any employees or agents in New York, or have an on-going contractual relationship with a New York corporation.  (Marcello Aff. ¶¶ 6, 9.)  The Plaintiff does not allege facts to the contrary in the complaint, nor does the Plaintiff contend that jurisdictional discovery or an evidentiary hearing would establish that the Defendants are subject to general jurisdiction in New York.  Accordingly, the Court finds that the Defendants are not subject to general jurisdiction in New York.

## C. Whether the Court Has Specific Jurisdiction Pursuant to CPLR § 302

Section 302 of New York's long-arm statute provides that:

(a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

>> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

>> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

> 4. owns, uses or possesses any real property situated within the state.

N.Y. CPLR § 302(a) (McKinney 2010).

Although the Plaintiff does not specify a jurisdictional theory in the complaint, in opposition to the instant motion, the Plaintiff claims that the Defendants are subject to the personal jurisdiction of this Court pursuant to CPLR sections 302(a)(1) and 302(a)(3). The Court will examine each of these theories of jurisdiction in turn.

### 1. As to Specific Jurisdiction Pursuant to CPLR § 302(a)(1)

"To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt. LLC, 450 F.3d 100, 103 (2d Cir. 2006). "[A] suit will be deemed to have arisen out of a party's

activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007) (internal quotation marks and citation omitted). When considering whether a defendant "transacted business," New York courts rely on the constitutional standard set forth by the Supreme Court: "whether the defendant's conduct constitutes 'purposeful[ ] avail [ment]' 'of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Best Van Lines, 490 F.3d at 246–47 (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)) (alterations in original).

Section 302(a)(1) "'is a single act statute and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York' as long as the requisite purposeful activities and the connection between the activities and the transaction are shown." Deutsche Bank Sec., Inc. v Montana Bd. of Invs., 21 A.D.3d 90, 93–94, 797 N.Y.S.2d 439, 442 (1st Dep't 2005) (quoting Kreutter v McFadden Oil Corp., 71 N.Y.2d 460, 467 (1988)).

The Plaintiff contends that this Court has specific jurisdiction pursuant to section 302(a)(1) over the Defendants because: (1) the Defendants transacted business in New York by negotiating and entering into a substantial business transaction with the Plaintiff and (2) the Defendants transacted business through their operation of the Mitchell Crane Website and advertisement on the Cranenetwork Website.

### a. Whether the Defendants "Transacted Business" by Contracting with the Plaintiff

To determine whether a party in a contract action has "transacted business" within the meaning of Section 302(a)(1), courts focus primarily on the following factors:

> (i) whether the defendant has an on-going contractual relationship
> with a New York corporation; (ii) whether the contract was

> negotiated or executed in New York and whether, after executing a
> contract with a New York business, the defendant has visited New
> York for the purpose of meeting with parties to the contract
> regarding the relationship; (iii) what the choice-of-law clause is in
> any such contract; and (iv) whether the contract requires [the
> defendant] to send notices and payments into the forum state or
> subjects them to supervision by [a] corporation in the forum state.

Sunward Elec., Inc. v. McDonald, 362 F.3d 17, 22–23 (2d Cir. 2004) (quoting Agency Rent A

Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996)). Another important

factor is whether the contract is to be performed in New York. See Cooper, Robertson &

Partners, L.L.P. v. Vail, 143 F. Supp. 2d 367, 371 (S.D.N.Y. 2001) (stating that "[i]n determining

jurisdiction, the place of performance is more critical than the place of the execution of a

contract"). No single factor is dispositive. Rather, a finding of personal jurisdiction must be

based upon the totality of the circumstances. Agency Rent A Car, 98 F.3d at 29. Here, the

totality of the circumstances weighs against asserting jurisdiction over the Defendants.

As to the first factor, the nature of the contract between the parties was a one-time

agreement for the sale and delivery of the Crane and did not require an on-going contractual

relationship. While the parties may have negotiated aspects of the agreement, or remained in

contact after executing the agreement in order to effectuate the delivery, it does not change the

fact that the contract was a one-time agreement for the purchase of the Crane "*i.e.*, the parties did

not have any relationship either prior or subsequent to the short-term agreement[] at issue".

Zibiz Corp. v. FCN Tech. Solutions, No. 10-CV-1575, 2011 WL 837757, at *10 (E.D.N.Y. Mar.

2, 2011); see also Fernando v. Fernando, No. 09-CV-1390, 2010 WL 3119729, at *7 (E.D.N.Y.

Aug. 05, 2010) (oral contract where plaintiff agreed to pay $19,350 in exchange for the

defendant arranging for immigration documents and benefits for the plaintiff's son constituted a

one-time agreement and not an on-going contractual relationship); Mortg. Funding Corp. v.

Boyer Lake Pointe, LC, 379 F. Supp. 2d 282, 287 (E.D.N.Y. 2005) (Spatt, J.) (finding that an

alleged oral contract to serve as the broker on a mortgage refinancing did not establish an ongoing contractual relationship); Burrows Paper Corp. v. R.G. Eng'g, Inc., 363 F. Supp. 2d 379, 386 (N.D.N.Y. 2005) (finding no "on going contractual relationship" where the contract at issue was for the rebuilding of a printing press in Virginia to be delivered to Ohio and was the only transaction entered into between the parties).

Furthermore, although the Plaintiff does not allege any facts in support of the existence of an ongoing relationship, in a letter dated January 13, 2011 to United States District Judge Rosylnn R. Mauskaupf, who was previously assigned to this case, the Plaintiff mentioned that the parties communicated for six months after the wire transfers in order to attempt to effectuate the shipping (the "January 13, 2011 Letter"). However, these subsequent discussions do not convert the transaction from a one-time agreement to an ongoing relationship. As the Second Circuit affirmed in CutCo Industries v. Naughton, 806 F.2d 361, 367 (2d Cir.1986), "attempts to adjust a dispute as to performance of a contract or to discuss differences under an existing contract have no jurisdiction[al] consequences." Id. (internal quotation marks omitted).

With regard to the remaining factors, they also weigh against asserting jurisdiction. The contract was executed by the Defendants in Mississippi and the Defendants never visited New York in connection with the contractual relationship. In fact, to the extent any travel was anticipated in connection with the contract, it was for Bolkun to travel to see the Crane, which, according to the complaint in the Mississippi Action was located in Georgia. (See Pl.'s Opp., Ex. 2 (email from Bolkun to Marcello dated July 22, 2008 where Bolkun requests information regarding when she might be able to see the crane and discusses looking in to travel arrangements).) The Plaintiff also does not allege that the parties agreed to resolve any disputes under the contract in New York or under New York law. In addition, there was no payment

flowing into New York with regard to the contract. Although the Plaintiff's payments emanated

from a bank in New York, that is not sufficient to confer jurisdiction because "[s]uch unilateral

activity of another party or a third person is not an appropriate consideration when determining

whether a defendant has sufficient contacts with a forum State to justify an assertion of

jurisdiction." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 417, 104 S. Ct.

1868, 80 L. Ed. 2d 4104 (1984).

Furthermore, whether the Defendants' mistakenly believed that the Plaintiff was

purchasing the Crane on behalf of his Polish Corporation is of no consequence to the Court's

analysis. Even assuming that the Defendants "knew that [they] [were] contracting with, and

performing services for, a New York resident, such minimal contacts without more are

insufficient to confer personal jurisdiction under New York's long-arm statute". Bill-Jay Mach.

Tool Corp. v. Koster Industries, Inc., 209 A.D.3d 504, 505, 816 N.Y.S.2d 115, 117 (2d Dep't

2006). What is relevant however, is that the Plaintiff was not acting as an agent for a New York

corporation, and that the Crane was intended to be delivered to Poland and used to facilitate a

construction project in Poland.

With regard to where the contract was negotiated, it is undisputed that the Defendants

never physically entered New York. Rather, the negotiations were conducted via emails,

telephone calls, or faxes between the Defendants in Mississippi and the Plaintiff's agent in New

York. As the New York Court of Appeals has recently affirmed, "even when physical presence

is lacking, jurisdiction may still be proper if the defendant on his or her own initiative projects

himself or herself into [New York] to engage in a sustained and substantial transaction of

business". Fischbarg v. Doucet, 9 N.Y.3d 375, 382, 849 N.Y.S.2d 501, 507, 880 N.E.2d 22, 28

(2007) (internal quotation marks and alterations omitted). Here, the Court finds that the Plaintiff

has failed to sufficiently allege that the Defendants initiated the contact or otherwise "actively projected" themselves into New York.

There is no dispute that the Plaintiff initiated the actual contact between the parties. (See Szrodzki Decl., ¶ 3 ("After sorting through numerous sources, I was able to locate MitchellCrane companies via the Internet and asked Monika Bolkun *to establish contact* with them as my translator") (emphasis added); Bolkun Decl., ¶ 4 ("[A]round July 2008, *I made contact* with Walt Marcello via a network called "Cranenetwork". Shortly thereafter, I received a reply from Mr. Marcello of Mitchell Companies and we began the negotiation process.") (emphasis added).). Nevertheless, the Plaintiff states in his opposition that the Defendants "knowingly initiated" the contract negotiations. According to the Plaintiff, the Defendants "initiated" the contract negotiations by soliciting his business through the advertisements for the Crane on the Mitchell Crane Website and the Cranenetwork Website, which were viewable by the Plaintiff at his desktop computer in New York, and which allowed the Plaintiff to directly contact the Defendants through links on the websites from his computer in New York. In addition, the Plaintiff contends that the Defendants actively projected itself to "purs[e] negotiations" with the Plaintiff through numerous emails and telephone calls.

The Plaintiff cites ¶¶ 16–18 of the complaint as "contain[ing] several allegations that point out the various ways in which Defendants' website has solicited business in New York." The cited portion of the complaint states in full:

> 16) After conducting research by himself and through his assistants, Plaintiff was able to locate Defendants Mitchell Companies and Mitchell Crane as sellers or agents of sellers of a 1986 Omeg Crane (from hereinafter referred to as "Crane").

> 17) Plaintiff made contact with Defendant Walt who was authorized to act on behalf of Mitchell Companies and Mitchell Crane and was informed that the price of the Crane was $85,000.00.

18) After negotiations, Plaintiff and Walt agreed that the Crane would require additional equipment parts to be operational, for which Plaintiff had to pay extra costs.

(Compl. ¶¶16–18.)  Making all inferences in favor of the Plaintiff, the Court finds that these allegations fail to plausibly allege that, either through the Mitchell Crane Website, the Cranenetwork Website or other means, the Defendants solicited the Plaintiff's business in New York.  Rather, the Plaintiff's allegations reflect that the Plaintiff initiated the contact with the Defendants and any subsequent interaction and communication the Defendants had with New York arises from the Plaintiff's initial communication. The fact that the Plaintiff initiated the contact between the parties weighs against asserting personal jurisdiction over the Defendants. Mortg. Funding Corp., 379 F. Supp. 2d at 287 (citing  Prof'l Personnel Mgmt. Corp. v. Southwest Med. Assocs., Inc., 216 A.D.2d 958, 628 N.Y.S.2d 919, 920 (4th Dep't 1995)); cf. Maranga v. Vira, 386 F.Supp.2d 299 (S.D.N.Y. 2005) ("At bottom, the placement of the ads, even in conjunction with the telephonic negotiations that followed, implies only that Defendants invited residents of New York, and quite possibly others as well, to transact business in Louisiana. That is not the same thing as the Defendants themselves having transacted business in New York.").

However, "it is not necessarily who initiated contact that is determinative, but rather, the nature and quality of the contacts and the relationship established as a result".  Grimaldi v. Guinn, 72 A.D.3d 37, 51, 895 N.Y.S.2d 156, 167 (2d Dep't 2010).  Thus, the fact that there were subsequent "negotiations" regarding the Crane after the Plaintiff initially contacted the Defendants could indicate that the Defendants actively projected themselves into New York if the Defendants purposefully created a continuing relationship with its center of gravity in New York.  Id.; cf. Zibiz Corp., 2011 WL 837757, at *10 ("[A]lthough physical presence in New

York is not a prerequisite for jurisdiction, the limited number of e-mails and telephone calls between defendant and plaintiff are insufficient to confer personal jurisdiction over defendant under Section 302(a)(1) since, *inter alia*, plaintiff initiated the parties' relationship in Virginia and any interaction and communication that defendant had with New York thereafter arises from plaintiff's initial communication; defendant did not otherwise actively project itself into New York; and the 'center of gravity' of the agreements was Hawaii.") (internal quotation marks omitted).

First, the Plaintiff contends that the Defendants "actively projected" themselves into New York by negotiating the contract through email and telephone calls. However, "courts seem generally loath to uphold jurisdiction under the 'transaction in New York' prong of CPLR 302 if the contract at issue was negotiated solely by mail, telephone, and fax without any New York presence by the defendant." Worldwide Futgol Assoc., Inc. v. Event Entm't, Inc., 983 F. Supp. 173, 177 (E.D.N.Y. 1997); see United Computer Capital Corp. v. Secure Prods., L.P., 218 F. Supp. 2d 273, 278 (N.D.N.Y. 2002) ("Where a plaintiff's cause of action is based upon a contract, negotiation of the contractual terms by phone, fax or mail with the New York party is generally insufficient to support a finding of the transaction of business in New York."). In fact, even when a defendant has communicated "with plaintiff in New York by phone, fax and possibly mail … 'no court has extended § 302(a)(1) to reach a nondomiciliary who never entered New York, who was solicited outside of New York, who performed outside of New York such services as were performed, and who is alleged to have neglected to perform other services outside of New York.'" Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 788–89 (2d Cir. 1999) (quoting Mayes v. Leipziger, 674 F.2d 178, 185 (2d Cir. 1982)).

As the Second Circuit recently held, where, as here, the contract "was to be performed entirely outside of New York. . . . [t]he mere fact that [the Defendants] engaged in *some* contact with a New York purchaser does not mean that [the Defendants] transacted business in New York." Berkshire Capital Group, LLC v. Palmet Ventures, LLC, 307 F. App'x 479, 481 (2d. Cir. 2008). However, under some limited circumstances, a party may be found to have "transacted business" on the basis of telephone or internet communications. For that to be the case, the Court must find that the communications flowing into New York involve a substantial transaction with its "center of gravity" in New York. See Maranga v. Vira, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005) ("[C]ommunications into New York will only be sufficient to establish personal jurisdiction if they were related to some transaction that had its 'center of gravity' inside New York, into which a defendant 'projected himself.') (quoting Wilhelmshaven Acquisition Corp. v. Asher, 810 F. Supp. 108, 112 (S.D.N.Y.1993)); see also Whitaker v. Fresno Telsat, Inc., 87 F. Supp. 2d 227, 230 (S.D.N.Y. 1999) ("Only if the purpose of the calls is for the defendant to actively participate in business in New York, can they alone support a finding of New York long arm jurisdiction under C.P.L.R. § 302(a)(1).") (internal quotation marks and alteration omitted).

The Plaintiff cites Ehrlich-Bober & Co. v University of Houston, 49 N.Y.2d 574, 427 N.Y.S.2d 604 (1980), Deutsche Bank Securities, Inc. v. Montana Board of Investments, 21 A.D.3d 90, 797 N.Y.S.2d 439 (1st Dep't 2005), and Parke–Bernet Galleries v. Franklyn, 26 N.Y.2d 13, 17, 308 N.Y.S.2d 337, 256 N.E.2d 506, for the proposition that the Defendants "actively projected" themselves into New York through their communications because, as a sophisticated party selling a Crane to a New York resident that was worth "nearly $100,000", the Defendants engaged in a "substantial transaction of business" in New York.

However, this reliance is misguided because, unlike the instant matter, the cases cited by the Plaintiff involved "substantial transactions of business" where the defendant, from outside of New York, engaged directly in New York commerce. For example, in both <u>Ehrlich-Bober & Co. v University of Houston</u>, 49 N.Y.2d 574, 427 N.Y.S.2d 604 (1980) and <u>Deutsche Bank Securities, Inc. v. Montana Board of Investments</u>, 21 A.D.3d 90, 797 N.Y.S.2d 439 (1st Dep't 2005), the courts upheld jurisdiction where the out-of-state defendant, through electronic communications, engaged in substantial securities transactions that were centered in New York. <u>See also</u> <u>Kulas v. Adachi</u>, No. 96-CV-6674, 1997 WL 256957, at *7 (S.D.N.Y. May 16, 1997) ("Only in cases where the telephone call or communication clearly shows that the defendant intends to project itself into ongoing New York commerce, *such as where a defendant directly conducts market activity or securities transactions in New York* over the telephone, do New York courts sustain jurisdiction based on telephone calls or facsimile transmissions alone.") (emphasis added). In addition, in <u>Parke–Bernet Galleries v. Franklyn</u>, 26 N.Y.2d 13, 17, 308 N.Y.S.2d 337, 256 N.E.2d 506, the defendant, in California, "although never actually present, was receiving and transmitting bids over an open telephone line and was an active participant in an auction held" in New York, and the defendant was assisted by an individual who was present in New York.

By contrast, the only relationship between New York and the transaction in the instant case is that the Plaintiff is a New York resident. The center of gravity for the commercial transaction between the parties was either Mississippi, where the Defendants executed the contract, or Poland, where the Crane was to be delivered and ultimately used in a construction project. Thus, where, as here, "a defendant's contacts with New York consist of telephone calls, fax transmissions, and correspondence in connection with the negotiation of a contract that has a

center of gravity well outside the state, there is no personal jurisdiction under C.P.L.R. § 302(a)(1)." DirecTV Latin America, LLC v. Park 610, LLC, 691 F. Supp. 2d 405, 420 (S.D.N.Y. 2010); Bank Brussels Lambert, 171 F.3d at 787–89 (finding no section 302(a)(1) jurisdiction over a Puerto Rican law firm retained by New York banks to provide opinion in connection with transactions despite telephone communications regarding those transactions, where the defendant was solicited outside of New York to perform their services, all legal work was performed in Puerto Rico, and there was no physical presence of the defendant in New York).

### b. Whether the Defendants "Transacted Business" through the Websites

The Court next considers whether Defendants' creation and maintenance of the Mitchell Crane Website and advertisement on the Cranenetwork Website amount to transactions of business in New York that would support section 302(a)(1) jurisdiction. In order to determine whether a website constitutes "transacting business" for purposes of personal jurisdiction, courts must look to the level of interactivity and commercial nature of the exchange of information that occurs on a website. See Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163 (2d Cir. 2010).

With respect to the level of interactivity, a website is considered "interactive" if it permits the exchange of information between viewers and a defendant and "depending on the level and nature of the exchange may be a basis for jurisdiction". Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000). On the opposite end of the spectrum are passive websites "that do[] little more than make information available to those who are interested in it". Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1121 (W.D. Pa. 1997). A passive website "alone would not provide a basis for the assertion of personal jurisdiction over [its owner]".

Grimaldi v. Guinn, 72 A.D.3d 37, 50, 895 N.Y.S.2d 156, 166–67 (2d Dep't 2010). However, "passive Web sites, when combined with other business activity, may provide a reasonable basis for the assertion of personal jurisdiction." Id., 72 A.D.3d at 49, 895 N.Y.S.2d at 165. The Second Circuit has noted that "a website's interactivity may be useful for analyzing personal jurisdiction under section 302(a)(1), but only insofar as it helps to decide whether the defendant "transacts any business" in New York—that is, whether the defendant, through the website, 'purposefully avail[ed] himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws.'" Best Van Lines, Inc. v. Walker, 490 F.3d 239, 252 (2d Cir. 2007) (citing CutCo Indus. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986)).

The Plaintiff primarily argues that the websites are "interactive" and therefore constitute "transacting business" because a potential consumer can click on a link that permits them to directly email the Defendants. The Mitchell Crane Website, which is no longer operational and which the Plaintiff does not allege he used to contact the Defendants, was directly operated by the Defendants. The website provided information about the available products, rental information, and a "Contact Us" page containing the Mitchell Cranes address and phone number, as well as a direct link to Marcello's email. (Pl.'s Opp., Ex. 1.)

By contrast, the Cranenetwork Website is operated by a third party, and acts as a conduit to connect potential consumers with the sellers of cranes and crane parts. A user can perform an inventory search to locate the type of crane they would like to buy, and sellers can advertise their available products. On the Cranenetwork Website, potential consumers can view a product; information about that product; and the seller's contact information. There is also a link that enables the consumer to send an email to the seller. As described by the Plaintiff "the user inputted their information such [as their] address, the crane they are interested in, email etc. and

received a response back from the poster or website owner".  (Pl.'s Opp. at 10.)  Notably, the

Plaintiff does not allege that the Cranenetwork Website or the Mitchell Crane Website permitted

the direct purchase online or allowed for any part of the transaction to occur online.  Rather, the

websites, as described in the complaint and declarations, simply provided the Plaintiff with

information about the types of cranes available; how the Defendants could be contacted; and the

ability to contact the Defendants directly.

Generally, a website that only provides information about an item for sale and contact

information for the seller, without any ability to directly purchase the items through the website

is considered "passive" and therefore "insufficient to demonstrate that the website operator has

purposefully availed itself of the privilege of conducting activities within New York."  Zibiz

Corp. v. FCN Tech. Solutions, No. 10-CV-1575, 2011 WL 837757, at *2 (E.D.N.Y.  Mar. 2,

2011); ISI Brands, Inc. v. KCC Int'l, Inc., 458 F. Supp. 2d 81, 86 (E.D.N.Y. 2006) (Spatt, J.)

("Internet websites that are not of a commercial nature and do not permit the purchase of

products on-line are not sufficient to confer personal jurisdiction pursuant to section 302(a)(1).");

Aqua Prods., Inc. v. Smartpool, Inc., No. 04-CV-5492, 2005 WL 1994013, at *5 (S.D.N.Y. Aug.

18, 2005) ("Passive websites which primarily make information available to viewers, but do not

permit an exchange of information, fail to justify the exercise specific jurisdiction over a non-

domiciliary.").

Furthermore, a website is still considered passive and insufficient to confer jurisdiction

where, as here, the only purported "exchange of information" available on the website is a direct

link allowing a user to contact the seller.  See Stephan v. Babysport, LLC, 499 F. Supp. 2d 279,

297 (E.D.N.Y. 2007) (holding that the defendant's website was passive where customers could

not complete a contract for sale but rather included a link to another website where the product

could be purchased and therefore did not "support a finding of the transaction of business sufficient to support the exercise of personal jurisdiction" because the website did "little more than make information available to those who are interested in the product") (internal quotation marks omitted); Yanouskiy v. Eldorado Logistices Sys., Inc., No. 05-CV-2202, 2006 WL 3050871, at *3 (E.D.N.Y. Oct. 20, 2006) ("Specifically, the website contains a contact information page where viewers may leave their e-mail address and a short message, both of which will presumably be transmitted to Eldorado after the viewer clicks 'submit query.' However, the mere ability to contact defendant, standing alone, establishes nothing for purposes of this Court's general jurisdiction analysis."); see also Arouh v. Budget Leasing, Inc., 63 A.D.3d 506, 506, 883 N.Y.S.2d 4, 5 (1st Dep't 2009) ("Defendant's website, which described available cars and featured a link for email contact but did not permit a customer to purchase a car, was not a projection of defendant into the State".).

Although the Cranenetwork Website also allowed for inventory searches, this does not compel a different result. See Yanouskiy, 2006 WL 3050871, at *5 (holding that a website which contained information about the defendant's products and an inventory search device, but did not allow buyers to directly place an order without further communication, was an insufficient basis to assert jurisdiction over the defendants).

It is undisputed that after the Plaintiff initially contacted the Defendants through the Cranenetwork Website, the remaining negotiations took place over the telephone and email. (Bolkun Decl., ¶ 5.) The fact that the contact took place via email, for which the medium was a desktop computer, does not mean that the Defendants "transacted business" through the "website". Where, as here, parties communicate through email, it is analogous to sending letters

or making telephone communications to people in New York.  See Hearst Corp. v. Goldberger, No. 96-CV-3620, 1997 WL 97097 (S.D.N.Y.  Feb. 26, 1997).

By contrast, the cases upon which the Plaintiff relies involve websites that not only allowed users to directly email the defendant or the defendant's agent—the only alleged exchange of information available through the Mitchell Crane Website and the Cranenetwork Website—but also included additional exchanges of information that were directly related to the operation of the business.  See New Angle Pet Prods. v. MacWillie's Golf Prods., No. 06-CV-1171, 2007 WL 1871345, at *3 (E.D.N.Y. June 28, 2007) (finding that the websites at issue were interactive because they permitted users to purchase products on-online by providing payment and shipping information); Obabueki v. Int'l Bus. Machines Corp., No. 99-CV-11262, 2001 WL 921172, at *4 (S.D.N.Y. Aug. 14, 2001) (finding that the website at issue was "interactive" because it was used by the defendant to operate the pre-employment screening service whereby "prospective customers download an application form which can be faxed to Choicepoint, Inc. with payment for the service; then they receive a login ID and password with which they may request background searches of potential employees through the website"); Citigroup, 97 F. Supp. 2d at 565 (finding that the website at issue fell into the "middle category" of interactivity because it permitted customers in New York to apply for loans on-line, print out applications for submission by facsimile, and converse on-line with representatives through a "chat" platform on the website itself); Hsin Ten Enter. USA v. Clark Enters., 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000) (finding that the website at issue was "highly interactive" where it allowed consumers to purchase products online, download order forms, and communicate with online representatives through the website).

Here, the Plaintiff does not allege that the Defendants perform their services, namely, delivering cranes and construction parts, through the websites.  Nor does the Plaintiff allege that customers can download or fill out forms associated with the purchase or shipping of the cranes through the website or engage in negotiations through an online platform.  In fact, the Plaintiff learned that the Crane required additional parts and about the Defendants shipping capabilities not from any posting on the website itself, but through separate email and phone conversations with the Defendants.

Nor does the Plaintiff allege any facts from which the Court can infer that the Defendants purposefully availed themselves of the privilege of conducting business in New York by using the websites to specifically target New York consumers.  Rather, the Plaintiff inexplicably contends that he has established a prima facie case of personal jurisdiction based on the Defendants solicitation of its business through the website because the Defendants "produced no evidence showing that their website, was somehow limited to certain marketplaces" and that the Defendants' "website targeted consumers in New York as equally as any other market place".  (Pl.'s Opp. at 8.)  This argument reflects a misunderstanding of the applicable standard.  The fact that the two websites equally target New York consumers and all other consumers throughout the world means, by definition, that they are not directly soliciting New Yorkers.  Telebyte, Inc. v. Kendaco, Inc., 105 F. Supp. 2d 131, 136 (E.D.N.Y. 2000) (Spatt, J.) ("[T]he mere existence of a web site accessible from New York is insufficient to establish 'solicitation' for purposes of personal jurisdiction." (citing Bensusan Rest. Corp. v. King, 126 F.3d 25, 29 (2d Cir. 1997)); Hsin Ten Enter. USA, Inc., 138 F. Supp. 2d at 456 ("[T]he Second Circuit has made clear that personal jurisdiction over a defendant is not appropriate simply because the defendant maintains a website which residents of New York may visit.").  "Were it otherwise, every entity or

individual that ran a highly interactive website from anywhere in the world could be sued for any reason in New York." In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000, 230 F. Supp. 2d 376, 383 (2002). Thus, the Mitchell Crane Website and Cranenetwork Website were more "akin to advertisement[s] in a nationally-available magazine or newspaper, and do[] not without more justify the exercise of jurisdiction over [the Defendants]." See Citigroup Inc., 97 F. Supp. 2d at 565.

This is especially true, where, as here, the Plaintiff located the product and engaged in initial communications with the Defendants through an advertisement on a third-party website. Here, the Cranenetwork Website is similar to classifieds or auction type websites that allow users to post items for sale, bid on items for sale, or contact sellers of posted items. At least one New York court has held that, even on an interactive auction website where a user has to input payment information, where an item is purchased by a New York plaintiff for delivery outside of New York, the defendant is not subject to personal jurisdiction in New York. See Jones v. Munroe, 2 Misc.3d 24, 25, 773 N.Y.S.2d 498, 498 (1st Dep't 2003) ("Civil Court properly dismissed the complaint based on plaintiff's failure to establish that the Florida-domiciled defendants transacted business within New York City by selling an automobile to plaintiff through "E-bay," an online auction house. The isolated sales transaction, the result of "random" and "attenuated" contacts, was insufficient to confer personal jurisdiction particularly in these circumstances where delivery of the car undisputedly was made in Florida.").

Indeed, a majority of courts are unwilling to assert jurisdiction over disputes arising from purchases on auction websites even when the item is delivered into the plaintiff's home state. See Sayeedi v. Walser, 15 Misc.3d 621, 835 N.Y.S.2d 840 (N.Y. City Civ. Ct. 2007) ("Although several non-New York courts have had the occasion to consider the issue, the majority of these

courts have held that the usual online auction process does not rise to the level of purposeful conduct required to assert specific jurisdiction.") (collecting cases); see also Boschetto v. Hansing, 539 F.3d 1011, 1014 (9th Cir. 2008) (affirming that a single eBay auction posting by a Wisconsin resident was insufficient to confer specific jurisdiction in California for breach of contract and fraud claims brought by a California resident).

It is undisputed that both of the Mitchell Crane Website and the Cranenetwork Website contained advertisements viewable by anyone "in New York or throughout the world", and were not directed to New Yorkers but rather a "nationwide audience". Therefore, the websites "do not establish that, for purposes of section 302(a)(1), [that the Defendants] *purposefully* availed [themselves] of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." Best Van Lines, Inc., 490 F.3d at 253–54 (alterations and internal quotation marks omitted) (emphasis in original).

Furthermore, the Plaintiff has failed to allege facts supporting the existence of a substantial relationship between the transaction resulting from the Defendants advertisements on the websites and the underlying claim. Notably, the majority of the cases relied upon by the Plaintiff are distinguishable because they involved patent, trademark or copyright infringement causes of action as opposed to contract claims. In those cases, the courts found a direct relationship between the website and the underlying claim, and thus grounds for asserting personal jurisdiction over the defendant, where the infringing mark was visible on the website or the infringing products were advertised on the website. New Angle Pet Prods., 2007 WL 1871345, at *2–3 (E.D.N.Y. June 28, 2007) (personal jurisdiction was warranted in a copyright infringement case where there was evidence of sales into New York of allegedly copyright-infringing products, including two Internet sales to New York residents through an interactive

web site with national reach and advertising); <u>Hsin Ten Enter. USA, Inc.</u>, 138 F. Supp. 2d at 456

(personal jurisdiction was warranted in a patent infringement case where the claim arose from

the defendant's use and sale of the offending product, which was caused "at least in part, by the

Websites and the presence of representatives and affiliates in New York" and arose from the

defendant's use of the offending trademark on its website). By contrast, the Plaintiff does not

allege that the Mitchell Crane Website or the Cranenetwork Website contained any

representation with respect the Defendants ability to ship cranes to Poland, which is the basis for

the breach of contract claim.

Finally, the two breach of contract cases cited by the Plaintiff, <u>Grimaldi v. Guinn</u>, 72

A.D.3d 37, 895 N.Y.S.2d 156 (2d Dep't 2010), and <u>Kaloyeva v. Apple Vacations</u>,

21 Misc.3d 840, 866 N.Y.S.2d 488 (N.Y. City Civ. Ct. 2008), are factually distinguishable. In

<u>Kayoleva</u>, the plaintiff, a New York resident, entered into a contract with a travel agency that

was located in New York for a vacation at a resort located in the Dominican Republic. The

plaintiff commenced a lawsuit against the defendant, Apple Vacations, for a number of causes of

action, including breach of contract, based on the defendant's alleged misrepresentation on its

website as to the quality of the resort. Unlike the websites at issue here, which were passive and

not targeted to New York consumers, the defendant's website in <u>Kayoleva</u> was "highly

interactive" insofar as it "allowed New York residents to not only research various vacation

packages, but to select and book a specific vacation package, either directly through Defendant

or through a representative of Defendant" and "actively solicited business in New York, by

recommending travel agencies located in specific New York areas who were stated to be highly

qualified to book vacations on Defendant's behalf." 21 Misc.3d at 844, 866 N.Y.S.2d at 492.

Furthermore, the contract at issue in <u>Kayoleva</u> was actually negotiated and executed with the

defendant's agent in New York, who the plaintiff was able to locate based on the defendant's recommendation of that agent on its website.  Here, the Court has already found that no part of the contract at issue was "solicited, negotiated, or executed" in New York by the Defendants.

In Grimaldi, the plaintiff, a New York resident, contacted the defendant, a New Jersey resident, with regard to an auto restoration project.  The plaintiff either contacted the defendant after viewing his passive website advertising his auto restoration services, or based on a referral from a co-defendant.  Either way, subsequent to the initial contact, the defendant then engaged in communications with the plaintiff regarding the project over the course of a year and also performed some of the agreed upon services.  Although none of the services were performed in New York, the court nevertheless held that jurisdiction over the defendant was appropriate because he had "purposefully created a continuing relationship with the plaintiff centered on the project at issue".  72 A.D.3d at 52, 895 N.Y.S.2d at 167–68.  Thus, Grimaldi is distinct from the present situation where, as previously held, the Plaintiff has not sufficiently alleged the existence of an ongoing relationship between the parties or that the Defendants initiated an ongoing relationship.

Accordingly, the Plaintiff has failed to establish a prima facie case that the Defendants transacted business through the passive Mitchell Crane Website and Cranenetwork Website, or that the two websites had a substantial relationship to the underlying action and therefore there is no basis for this Court to exercise jurisdiction over the Defendants under CPLR § 302(a)(1).  See Benifits By Design Corp. v. Contractor Mgmt. Servs., LLC, 75 A.D.3d 826, 829–30, 905 N.Y.S.2d 340, 344 (3d Dep't 2010) ("Although plaintiffs further contend that defendant transacted business in New York by maintaining a Web site that offered information about its products and services and offered opportunities for customer feedback to New York users along

with others, there was no demonstrated relationship of any kind between the Web site and the escrow transaction."); Armouth Intern., Inc. v. Haband Co., Inc., 277 A.D.2d 189, 715 N.Y.S.2d 438 (2d Dep't 2000) (holding that the fact that the defendant had a website that allowed sale of its retail goods to individuals in New York did not confer personal jurisdiction insofar as it was unrelated to the breach of a contract where the defendant's alleged breach occurred in Georgia when it refused to accept the goods and the contract was executed in New Jersey).

### 2. Whether the Court has Specific Jurisdiction Over the Defendants Pursuant to CPLR § 302(a)(3)

The Plaintiff is also asserting jurisdiction pursuant to section 302(a)(3) of New York's long-arm statute. In order to state a prima facie case of jurisdiction under § 302(a)(3), the Plaintiff must plausibly allege that:

> (1) the [Defendants] committed a tortious act outside the state; (2) the cause of action arose from that act; (3) the act caused injury to a person or property within the state; (4) the [Defendants] expected or should reasonably have expected the act to have consequences in the state; (5) the [Defendants] derive[] substantial revenue from interstate or international commerce.

Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 106 (2d Cir. 2006) "To satisfy the first element, the plaintiff 'need not actually prove that defendant committed a tort but rather need only state a colorable cause of action.'" Id. (quoting Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 125 (2d Cir. 2002)).

The Plaintiff mainly argues that jurisdiction pursuant to section 302(a)(3) is appropriate because it was reasonably foreseeable that the publication of websites will have consequences in New York. Not only are the cases cited by the Plaintiff for this proposition inapposite because they involve trademark infringement claims, see Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 568 (S.D.N.Y. 2000) (personal jurisdiction was warranted under section 302(a)(3) in a trademark infringement case because "it was reasonably foreseeable that publication of web sites

with the offending marks would have consequences in New York"); Am. Network, Inc. v. Access America/Connect Atlanta, Inc., 975 F. Supp. 494, 498 (S.D.N.Y. 1997) (same), but this issue is ultimately irrelevant because the Plaintiff has failed to assert "a colorable cause of action" to support a prima facie case of jurisdiction under section 302(a)(3).

In his opposition to the instant motion, the Plaintiff appears to premise jurisdiction under section 302(a)(3) on the breach of contract cause of action. However, it is well-settled that a breach of contract does not constitute a tortious act under CPLR § 302(a)(3). See Pramer S.C.A. v. Abaplus Intern. Corp., 76 A.D.3d 89, 97, 907 N.Y.S.2d 154, 160 (1st Dep't 2010); Amigo Foods Corp. v. Marine Midland Bank–New York, 39 N.Y.2d 391, 396, 384 N.Y.S.2d 124, 127, 348 N.E.2d 581, 583–84 (1976). The only cause of action premised on a tortious act the Plaintiff asserts in the complaint is a cause of action for "deceit"—which the Court understands to be a claim for fraudulent inducement—based on the Defendants allegedly false representation that they could deliver the Crane to Poland. To the extent the parties address the deceit cause of action in their briefs, it is primarily with respect to whether the Plaintiff had pled the claim with the requisite particularity. However, regardless of whether the Plaintiff has adequately pled this claim, the Court finds that it cannot support a finding of personal jurisdiction over the Defendants because "by merely alleging a tortious act, [a plaintiff] may not convert a simple breach of contract case into a tort for jurisdictional purposes." Kulas v. Adachi, No. 96-CV-6674, 1997 WL 256957, at *8 (S.D.N.Y. May 16, 1997) (quoting Electro Magnetic (S) Ltd. v. Sea Cargo Int'l. Inc., No. 90-CV-6335, 1991 WL 156371, at *2 (S.D.N.Y. Aug. 7, 1991)). As set forth below, the Court finds that the cause of action resulting from the alleged misrepresentations regarding the Defendants ability to ship the Crane to Poland does not permit a

separate cause of action sounding in tort and therefore cannot serve as a basis for asserting personal jurisdiction over the Defendants.

"[U]nder New York law, parallel fraud and contract claims may be brought if the plaintiff (1) demonstrates a legal duty separate from the duty to perform under the contract; (2) points to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) seeks special damages that are unrecoverable as contract damages." Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 183 (2d Cir. 2007).

The Plaintiff has alleged facts that, if true, demonstrate that he contracted with the Defendants for the sale and delivery to Poland of the Crane in exchange for $96,500.00. The Defendants' duty to deliver the Crane to Poland was not a separate duty, but part of their duty under the alleged contract. Even if there were two agreements—one for the sale of the Crane and one for the delivery of the Crane to Poland—the Plaintiff alleges that both agreements were part of a single transaction. (See Compl., ¶ 25 ("Plaintiff entered into this transaction because of his reliance that the Crane will be transported to Poland for business operations but, because Defendants could not facilitate the transfer to Poland, rendering the Crane and the entire transaction useless for the Plaintiff, Plaintiff refused to accept title to the Crane and rightfully rejected its purchase.").) By pleading a breach of contract claim, the Plaintiff is admitting that the agreement to deliver the Crane to Poland in exchange for $96,500.00 constitutes a valid enforceable contract. Because the alleged misrepresentations relate directly to the terms of the agreement to deliver the Crane to Poland in exchange for $96,500.00, "no fraud charge can arise independently therefrom." Miramax Film Corp. v. Abraham, No. 01-CV-5202, 2003 WL 22832384, at *12 (S.D.N.Y. Nov. 25, 2003) (citations omitted).

With respect to whether the alleged misrepresentations are collateral or extraneous, a party can only sustain a separate cause of action for fraud and breach of contract "if the misrepresentations alleged consist of more than mere promissory statements about what is to be done in the future, and the alleged misrepresentations must be misstatements of material fact or promises made with a present, but undisclosed intent not to perform them." Schulman v. Greenwich Associates, LLC, 52 A.D.3d 234, 234, 859 N.Y.S.2d 421, 422–23 (1st Dep't 2008) (internal quotation marks omitted); see also DNJ Logistic Group, Inc. v. DHL Exp. (USA), Inc., 727 F. Supp. 2d 160, 169 (E.D.N.Y. 2010) (noting that a promise of future volume expectations can only qualify as a material misrepresentation, in the context of a fraudulent inducement claim, if it was made with a present, but undisclosed intent not to perform.).

In the instant case, the alleged misrepresentation relates to a matter that is the subject of the contract at issue. The Plaintiff alleges that the Defendants made "false affirmations" about their ability to ship the Crane to Poland and that the Plaintiff wired the payments for the purchase and delivery of the Crane in reliance on defendant Marcello's "representations that the Crane will be shipped to Poland." (Compl., ¶¶ 13, 21.) Thus, the Plaintiff's allegation that the Defendants made misrepresentations as to the delivery of the Crane to Poland states nothing more than a breach of a promise of future performance that constituted the express terms of the contract, not promises collateral or extraneous to the contract. See Telecom Int'l Am., Ltd. v. AT&T Corp., 280 F.3d 175, 196 (2d Cir. 2001) (holding that the plaintiff's "fraudulent inducement claim therefore [ ] fails because it is simply a breach of contract claim in the tort clothing of (factually unsupported) allegations of an intent to breach"); John Paul Mitchell Sys. v. Quality King Distribs., Inc., No. 99-CV-9905, 2001 WL 910405, at *4 (S.D.N.Y. Aug. 13, 2001) ("[P]romises serving as inducement for the execution of the contract, such as

representations of expertise and resources, are not considered collateral to the contract because they simply underscore the defendant's purported intention and ability to perform the contract and are thus simply part and parcel of the intention to perform.") (internal quotation marks omitted); Lovely Peoples Fashion, Inc. v. Magna Fabrics, Inc., No. 95-CV-8450, 1998 WL 422482, at *10 (S.D.N.Y. July 22, 1998)( "To the extent that plaintiffs contend that defendants' representation that they had enough fabric to fill plaintiffs' immediate order was fraudulent . . .it was not extraneous to the contract and would not support a separate fraud action. The failure or inability to deliver the proper quantity of conforming goods goes to the heart of defendants' contractual obligations."); D.S. America (East), Inc. v. Chromagrafx Imaging Sys., Inc., 873 F. Supp. 786, 796 (E.D.N.Y. 1995) ("[T]he Plaintiff's allegations of misrepresentations as to delivery date and technical assistance state nothing more than breaches of promises of future performance that constitute the express terms of the contract, not promises collateral or extraneous to the contract.")

Accordingly, the Defendants alleged failure to ship the Crane to Poland is a breach of contract and not fraud.  Thus, regardless of whether the Court granted the Plaintiff to opportunity to amend the fraud claim to comport with the particularity requirements of Fed. R. Civ. P. 9(b), it would not alter the fact that the fraud claim is "actually a breach of contract claim rather than a tort claim, and a breach of contract claim couched as a fraud claim cannot serve as the basis for personal jurisdiction under CPLR § 302(a)(3)."  Fernando v. Fernando, No. 09-CV-1390, 2010 WL 3119729, at *1 (E.D.N.Y. Aug. 5, 2010); see also Arista Techs., Inc. v. Arthur D. Little Enters., Inc., 125 F. Supp. 2d 641, 653 (E.D.N.Y. 2000) (holding that because the plaintiff "merely converted a breach of contract action into a tort claim in order to obtain jurisdiction" the tort claim was duplicative and failed to satisfy the requirements of the long-arm statute);

Slapshot Beverage Co., Inc. v. Southern Packaging Machinery, Inc., 980 F. Supp. 684 (E.D.N.Y. 1997) (Spatt, J.) ("The essence of the alleged misstatements is that SPI would satisfactorily perform the contract. Thus, plaintiff is merely attempting to transform a breach of contract into a tort for jurisdictional purposes. Such characterizations are not a basis to ground jurisdiction under New York's long arm statute.") (internal quotation marks omitted).

## C.  Whether the Court Should Transfer the Case or Permit Jurisdictional Discovery

The Court finds that the Plaintiff has failed to establish a prima facie case of personal jurisdiction over the Defendants pursuant to the long-arm statute.  Therefore, the Court need not assess whether a jurisdictional finding in this matter would satisfy due process. Nor will the Court address the Defendants arguments to dismiss this action for failure to state a claim.    The Court is aware that it has "the authority, notwithstanding the absence of personal jurisdiction, to transfer the case pursuant to 28 U.S.C. § 1406(a) if the interests of justice so require." Pancoast v. Lee, 306 F. App'x 652, 652 (2d Cir. 2009).  However, in light of the already pending Mississippi Action, and the fact that neither party requested that the Court consider transfer, the Court declines to address the issue sua sponte.

Furthermore, the Court notes that in the January 13, 2011 letter to Judge Mauskaupf, the Plaintiff stated that jurisdictional discovery was necessary to determine whether the Defendants were subject to personal jurisdiction in New York.  However, jurisdictional discovery is not required where, as here, a plaintiff fails to make a prima facie showing of personal jurisdiction. Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 186 (2d Cir. 1998).  The Plaintiff did not raise the issue of jurisdictional discovery in opposition to the instant motion, nor did the Plaintiff point to any potential ground for jurisdiction over the Defendants.  Thus, because the Plaintiff has failed to make a prima facie showing that this Court has personal jurisdiction over the

Defendants, the Court grants the motion by the Defendants to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(2).

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the motion by Walt Marcello, Mitchell Crane Service Inc., and Mitchell Companies, LLC to dismiss Ireneusz Skrodzki's complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction is GRANTED, and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**
Dated: Central Islip, New York
August 19, 2011

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge